# IN THE UNITED STATES DISTRICT COURT
# FOR THE SOUTHERN DISTRICT OF ILLINOIS

| | |
|---|---|
| ANTHONY KING, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| vs. | ) Civil Case No. 02-596-JPG-PMF |
| | ) |
| CHARLES GILKEY, et al., | ) |
| | ) |
| Defendants. | ) |

## REPORT AND RECOMMENDATION

**FRAZIER, Magistrate Judge:**

Before the Court is defendants' motion to dismiss or in the alternative for summary judgment (Doc. No. 63). Also pending is defendants' second motion for summary judgment (Doc. No. 99). In this *Bivens*-type action, plaintiff challenges the conditions of his prison confinement at FCI-Greenville, claiming that defendants Gilkey and Revell violated rights protected by the First, Fifth, and Eighth Amendments by (1) interfering with his efforts to communicate with his stockbroker and (2) refusing to authorize the purchase of computer programing instruction books. Plaintiff seeks damages and injunctive relief. Defendants seek dismissal or judgment in their favor.

### Motions for Summary Judgment

Defendants' motions are supported by materials outside the pleadings. Because these materials are not disregarded by the Court, all arguments are considered under the standard set forth in Rule 56 of the Federal Rules of Civil Procedure. Fed. R. Civ. P. 12(b). Summary judgment is proper where "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the

moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c); *see also Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986). To determine whether there is a genuine issue of material fact, courts construe all facts in the light most favorable to the non-moving party and draw all reasonable and justifiable inferences in favor of that party. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986).

Before considering plaintiff's claims on the merits, the Court addresses the affirmative defenses. *Perez v. Wisconsin Dept. of Corrections*, 182 F.3d 532, 535 (7th Cir.1999); *Hunter v. Bryant*, 502 U.S. 224, 227 (1991).

### I.    Exhaustion of Administrative Remedies

Defendants seek dismissal of claims based on plaintiff's inability to communicate with his stockbroker for failure to exhaust administrative remedies. King argues that the exhaustion issue cannot be resolved on summary judgment due to genuine issues of material fact (Doc. No. 69).

Inmates must exhaust administrative remedies before bringing *Bivens*-type claims. 42 U.S.C. § 1997e(a); *Booth v. Churner*, 532 U.S. 731, 739 (2001). Failure to exhaust administrative remedies is an affirmative defense, which must be pled and proved by the defense. *Massey v. Helman*, 196 F.3d 727, 735 (7th Cir. 2000). When an exhaustion defense has merit, dismissal without prejudice is the appropriate relief.

The material facts are summarized as follows. Between 1999 and 2007, plaintiff was an inmate at FCI-Greenville. Defendant Gilkey was the warden of that facility until January 4, 2003. Defendant Revell took over the responsibilities as warden at FCI-Greenville on February 20, 2005.

In October of 1999, plaintiff submitted a written request to add certain telephone numbers

to his approved call list.  Several days later, he sent a note explaining that certain numbers pertained to existing financial assets and were not related to a business.  Defendant Gilkey sent a response in December, 1999, indicating that the requested additions had been made.

In April, 2000, plaintiff submitted a request regarding outgoing mail to corporations.  No response was sent, as defendant Gilkey formed the impression that plaintiff's concerns were resolved.

In September, 2000, plaintiff submitted an informal request seeking revision of the prison's phone system.  He was concerned that he was not able to leave telephone messages because the system required the answering party to dial in order to connect the call.  Defendant Gilkey responded, advising that the telephone system would not be modified and encouraging plaintiff to make use of other forms of communication.

On October 2, 2000, plaintiff wrote to a regional office of the Bureau of Prisons, seeking modification of the telephone system used at FCI-Greenville to permit answering parties to accept a message without dialing to make a connection.  That correspondence was forwarded to defendant Gilkey, who sent a response explaining that calls initiated through the telephone system must be accepted.  Once again, Gilkey encouraged plaintiff to use other modes of communication or arrange to call at a time when mechanical screening devices would be inactive.

In December, 2001, an administrative technician issued an incident report, accusing plaintiff of improper use of the telephone.  Plaintiff's unit disciplinary committee referred the charge to a disciplinary hearing officer.  On December 28, 2001, plaintiff wrote to defendant Gilkey, challenging the charge and the committee's referral.  Defendant Gilkey responded, advising plaintiff to follow the appropriate steps to challenge the outcome of the disciplinary process.

On January 3, 2002, a hearing officer found that plaintiff abused the prison's telephone system and imposed sanctions. Plaintiff appealed that decision using the administrative remedy procedure. On February 20, 2002, a regional director ordered a rehearing of the disciplinary charge. On March 13, 2002, a hearing officer determined that plaintiff's actions were not prohibited and expunged the disciplinary charge.

Meanwhile, on January 24, 2002, the Bureau of Prisons received an administrative claim from plaintiff for damages under the Federal Tort Claims Act. That claim was denied on May 30, 2002.

The Bureau of Prisons has established a formal administrative remedy process, which typically begins with an informal attempt to resolve a concern regarding confinement, progresses to a formal written request for an administrative remedy and an appeal to the regional director, and ends with a final appeal to the general counsel. 28 C.F.R. §§ 542.13, 542.14, 542.15. The administrative remedy process is separate from the procedure for exhausting tort claims *See* 28 C.F.R. § 543.30.

Plaintiff initiated the administrative remedy process by seeking an informal remedy and by challenging the initial outcome of the disciplinary report. He also asked for money to remedy his tort claim. However, with respect to his claim that the defendants violated his Constitutional rights by restricting his efforts to communicate with his stockbroker, he did not pursue all the steps in the administrative remedy process. This claim has not been exhausted.

Plaintiff accuses the defendants of abusing the judicial process. This argument lacks merit. Defendants' assertion of a meritorious affirmative defense is not abusive of the judicial process.

In sum, plaintiff failed to exhaust administrative remedies with respect to his claim that his

Constitutional rights were violated when he was prevented from communicating with his stockbroker in order to manage his investment assets. Because plaintiff brought this claim while he was a prisoner, the claim should be dismissed without prejudice.

## II.     Qualified Immunity

The defendants argue that they have qualified immunity from an award of damages. In order to resolve this defense, the Court first decides whether the alleged conduct violated a Constitutional right, taking the facts in the light most favorable to plaintiff. If so, the Court considers whether the right was clearly established in the light of the specific context of the case. *Saucier v. Katz*, 533 U.S. 194, 201 (2001).

At some point in time, the Office of Management and Budget issued Circular No. A-130, pertaining to the management by federal agencies of information and resources. This document led to the Bureau of Prisons' implementation in October, 1997, of a nationwide policy document on the topic of information security programs. Details regarding the Bureau's policy (set forth in Program Statement 1237.11) are not known, as only two pages of the forty-three page document were submitted for review (Doc. No. 69, pp. 30-32).

While plaintiff was confined at FCI-Greenville, he asked the supervisor of education for permission to take an independent study course in the field of computer programming. On January 29, 2002, Elizabeth Pottios denied plaintiff's request. She informed plaintiff that a course of training in programming techniques was prohibited, quoting policy language from Program Statement 1237.11. Ms. Pottios further advised plaintiff that he could be trained to use office software, word processing software, and spreadsheet design. Plaintiff was dissatisfied with this response and filed a request for an administrative remedy.

Defendant Gilkey denied plaintiff's request for an administrative remedy on February 6,

2002, indicating that plaintiff was requesting a self study course that was prohibited by Program Statement 1237.11.  Gilkey explained that the policy specifically forbids training on computer programming techniques.  Gilkey's decision was based on his belief that the director of the Bureau of Prisons had implemented a nationwide policy specifically prohibiting inmate training on the topic of computer programming.  Gilkey had no authority to revise or ignore the policy.

Defendant Revell did not evaluate plaintiff's requests for access to computer programming materials.  She waived service of process on July 11, 2006.

In a prison setting, censorship of incoming publications is  governed by a 4-factor standard measuring the reasonableness of the restriction in relation to legitimate penological interests, with great deference to prison administrators.  *Thornburgh v. Abbott*, 490 U.S. 401, 404 (1989) (*quoting Turner v. Safley*, 482 U.S. 78, 89 (1987)).  During the time plaintiff sought access to educational materials, the law provided that damages could not be collected from federal officials who were not personally involved in a Constitutional deprivation.  *Gossmeyer v. McDonald*, 128 F.3d 481, 494-95 (7th Cir.1997) ("In order to state cause of action under *Bivens*, the plaintiff must allege facts which show that the individual defendant was personally involved in the deprivation of the plaintiff's constitutional rights"); *Walker v. Taylorville Corr. Ctr.*, 129 F.3d 410, 413 (7th Cir.1997)(upholding dismissal for failure to allege personal involvement).

The defendants offer several arguments in support of their qualified immunity defense.  The first argument is based on established law requiring personal involvement.  With respect to defendant Revell, plaintiff argues that his pleadings put her "on notice" that her predecessor had violated his rights, such that she was responsible for the continued deprivation.

Plaintiff correctly observes that written correspondence, such as a request for an

administrative remedy, will show personal involvement in some circumstances.  If plaintiff notified defendant Revell and/or Gilkey that the education supervisor's decision deprived him of his right to free speech and they condoned the deprivation or refused to tailor a remedy, they were personally involved in the First Amendment deprivation.  *See Vance v. Peters*, 97 F.3d 987, 994 (7th Cir. 1996).

Defendant Revell's qualified immunity defense has merit.  Viewing the facts in plaintiff's favor, a trier of fact could not reasonably find that defendant Revell was personally involved in any decision to limit plaintiff's access to computer programming training material or that Revell approved or condoned the education supervisor's decision.  Assuming that plaintiff was deprived of his First Amendment right to free speech, defendant Revell was not personally involved in the deprivation.  As noted above, it was well-established in 1997 that damage awards in *Bivens*-type actions must be based on proof of personal involvement.  Defendant Revell is immune from a damage award on this claim.

Defendant Gilkey's qualified immunity defense presents a closer question.  Gilkey's involvement was tangential – he reviewed the education supervisor's response and rejected plaintiff's request for an administrative remedy.  Plaintiff argues that, by involving himself in the administrative remedy process, Gilkey became personally involved in the deprivation of his First Amendment right to free speech.

When plaintiff requested an administrative remedy, he explained that the alternative training resources suggested by the education supervisor were not appropriate in his circumstance because he already knew how to use office, word processing, and spreadsheet software.  Plaintiff expressed his interest in computer programming materials, saying he was motivated to advance his career

goals. He argued that it was "wrong" to deny him "the opportunity to train [himself] in the computer field of programming" (Doc. No. 63-3, p. 35).

Although plaintiff notified Gilkey that the education supervisor had failed to provide access to educational opportunities commensurate with his learning capacity, he did not mention the First Amendment or otherwise alert Gilkey of a free speech violation. The First Amendment is not violated each time a prison official limits inmate access to published material, and plaintiff's administrative remedy request could not reasonably support the inference that Gilkey knew plaintiff's free speech rights had been restricted on the basis of irrational policy. The facts, construed in plaintiff's favor, could not support a finding that Gilkey was personally involved in a First Amendment deprivation.

Plaintiff suggests that the defendants are "attempting an end run around" of the mandate of the Court of Appeals, which overruled a § 1915A finding that the claims made in plaintiff's original pleading were legally frivolous. The Court of Appeals found that the allegations in plaintiff's original pleading presented a substantial First Amendment issue. The Court also declined an invitation to speculate how inmate access to computer programming training materials would affect the prison's network, saying "the government must present some evidence to show that the restriction is justified by the need to protect the prison's computer system." *King v. Federal Bureau of Prisons*, 415 F.3d 634, (7th Cir. 2005). Because the Court of Appeals did not have the opportunity to evaluate affirmative defenses or judge the extent of defendants' personal involvement, the quoted language does not defeat the affirmative defenses.

In sum, assuming that a restriction on plaintiff's access to computer programming training materials violated plaintiff's First Amendment right to reading material, the evidence could not support a finding that these defendants were personally involved in the deprivation. During the

relevant time, personal involvement was a well-established legal requirement for a damage award. Qualified immunity from an award of damages is appropriate under these circumstances.

### III.    Injunctive relief

Plaintiff was transferred from FCI-Greenville to the Gateway Complex in Kansas City, Missouri in February, 2007, and was released from confinement on May 1, 2007. The parties agree that plaintiff's claim for injunctive relief is moot following plaintiff's release. *See Higgason v. Farley*, 83 F.3d 807, 811 (7th Cir.1996).

Plaintiff suggests that dismissal with leave to reinstate is appropriate, anticipating that he may return to federal custody if he violates the terms of his supervised release (Doc. No. 102). While it seems unlikely that plaintiff will return to FCI-Greenville and face the same conditions described in the Amended Complaint, the claim for injunctive relief may be dismissed without prejudice.

### IV.    Conclusion

IT IS RECOMMENDED that defendants' motions to dismiss or for summary judgment (Doc. Nos. 63, 99) be GRANTED as follows:

(1).    Plaintiff's claims for damages based on interference with his efforts to communicate with his stockbroker should be DISMISSED without prejudice for failure to exhaust administrative remedies;

(2).    Summary judgment should enter in favor of defendants Gilkey and Revell on their affirmative defense of qualified immunity on plaintiff's claims for damages based on refusal to authorize the purchase of computer programing instruction materials; and

(3).    Plaintiff's claim for injunctive relief is moot and should be DISMISSED without prejudice.

If these recommendations are adopted, no claims will remain for decision.

SUBMITTED:    **June 26, 2007**    .

*s/ Philip M. Frazier*
**PHILIP M. FRAZIER**
**UNITED STATES MAGISTRATE JUDGE**